UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Docket No.  21-CR-10227-DJC |
| | ) | |
| | ) | |
| WALACE LIMA | ) | |

<u>DEFENDANT'S SENTENCING MEMORANDUM</u>

Mr. Lima submits this sentencing memorandum in support of the parties' joint recommendation for a 63-month term of incarceration followed by five years' supervised release. This sentence is justified in this particular case given Mr. Lima's lack of prior criminal history, his inevitable deportation and separation from his children and family following this conviction, and the nature and circumstances of this case. While this sentence is below the applicable sentencing guideline range, the parties agree that the guidelines for child pornography offenses call for a sentence that is too harsh in this case. For the reasons set forth below, the proposed agreement reflects a sentence that is consistent with the multitude of factors set forth in 18 U.S.C. § 3553(a), and will result in a sentence that is sufficient, but not greater than necessary, to effectuate the purposes of sentencing. *United States v. Kimbrough*, 128 S.Ct. 558 (2007); *United States v. Booker*, 125 S.Ct. 738 (2005); *United States v. Martin*, 520 F.3d 87 (1st Cir. 2008); *United States v. Rodriguez*, 527 F.3d 221 (1st Cir. 2008).

I.   WALACE LIMA'S HISTORY AND CHARACTERISTICS AND THE NATURE
     AND CIRCUMSTANCES OF THE OFFENSE

Walace Lima was born in Brazil and spent most of his life there. His father was a hairdresser, and when Mr. Lima left school he became a hairdresser, as did his brother. Mr. Lima married his wife in Brazil, and together they have two children. After his brother got into a dispute over

1

money with an individual who then threatened Mr. Lima and his family, Mr. Lima made the decision to leave Brazil and come to the United States. In April 2018, Mr. Lima came to the U.S. with his son. He applied to asylum at the border, and was released on bond by the immigration court pending further proceedings. Mr. Lima retained a local immigration attorney to assist him and his family in obtaining immigration status in this country. He and his son settled in Massachusetts, where his son enrolled in school, and Mr. Lima rented a room for the both of them in an apartment. Mr. Lima worked as a landscaper in this country, working 55-60 hours per week to earn enough money to support his family and eventually bring his wife and daughter to the United States as well. He did not accrue any criminal history whatsoever in his time in this country.

On December 16, 2020, federal agents executed a search warrant at the apartment where Mr. Lima and his son were living. The search warrant was the result of an investigation into the use of a peer-to-peer file sharing program called BitTorrent. In the course of this investigation, agents discovered that a device belonging to Mr. Lima was using BitTorrent to download, and to make available to others to download, child pornography files. When agents executed the search warrant at Mr. Lima's home, Mr. Lima was cooperative and forthcoming with agents. He told agents that he was the one who used the electronic devices found in his room, and he admitted using BitTorrent to download movies and pornography. He gave agents the passwords to the devices, and told agents he would be willing to take a polygraph after he told them he never sent child pornography to anyone, never communicated with anyone about child pornography, and never touched a child sexually or had the desire to do so. Agents also spoke to Mr. Lima's son, a 14-year-old Rockland High School student at the time, who told agents that he did not observe

any pornography while living with his father and had never been sexually abused by anyone.[1] Agents took the electronics to the FBI for further examination. Mr. Lima was not arrested or charged at that time.

In the spring of 2021, Mr. Lima's wife and daughter joined Mr. Lima and his son in the United States. They moved to an apartment in Whitman and enrolled both children in school. Mr. Lima continued to work long hours to support his family.

In July 30, 2021, Mr. Lima was arrested at this home while his children slept. He has been detained ever since. Mr. Lima's wife has struggled to support their children during Mr. Lima's incarceration, requiring assistance with food and shelter and other basic needs for her and her children. She works as a house cleaner. Their son is now 16, and their daughter is now 11. Both attend school and are learning English. They both maintain a relationship with their father over the phone and remain close to him. Mr. Lima loves his children and misses them dearly. He knows his family was financially dependent on him, and it weighs heavily on him to know that his family is struggling without him.

## II.    THE SENTENCING GUIDELINES

The defense acknowledges that the sentencing guidelines are the starting point in determining any sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). However, the Court is also free to reject those guidelines if it feels that those guidelines are inconsistent with the list of factors the Court must consider in fashioning a sentence that is "sufficient, but not greater than, necessary" under 18 U.S.C. §3553(a). *Kimbrough v. United States, supra,* 552 U.S. at 110-111. Such is the case here. The binding plea agreement before the Court in this case reflects the

---

[1] According to discovery, Mr. Lima's daughter was also interviewed following Mr. Lima's arrest in July 2021. Mr. Lima's daughter also said Mr. Lima never sexually abused her in any way.

parties' view that, as in many cases, many of the enhancements contained in the applicable chapter of the Sentencing Guidelines, §2G2.2, should not apply – even if they technically apply - because they do not serve to reflect the seriousness of Mr. Lima's particular offense.

To start with, pursuant to the plea agreement, the parties agree that the four-level enhancement pursuant to §2G2.2(b)(4) should not apply. Probation has applied this enhancement in the Pre-Sentence Report, pointing to particular videos found on Mr. Lima's computer that they allege justify the enhancement. The defense contends that those videos described in the Pre-Sentence Report do not justify the enhancement.

However, no matter the Court's position on this enhancement, application of this enhancement, and others, should be given little weight in determining a just sentence because application of these enhancements does not serve to distinguish his case from a typical child pornography case. As noted by the Second Circuit, the impact of "§2G2.2 sentencing enhancements cobbled together through the process routinely result in Guidelines projections near or exceeding the statutory maximum, even in run-of-the-mill cases." *United States v. Dorvee*, 616 F.3d 174, 186 (2d Cir. 2010). The Court wrote that application of most of the §2G2.2 enhancements "are all but inherent to the crime of conviction." *Id*. The frequency of certain enhancements in the child pornography guideline was also pointed out in the Sentencing Commission's June 2021 report on the child pornography guidelines for non-production offenders. *See* USSC, *Federal Sentencing of Child Pornography Non-Production Offenses* (June 2021) (available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf) (hereinafter "2021 Commission Report"). The Commission noted, "Four of the six enhancements— accounting for a combined 13 offense levels—cover conduct that has become so ubiquitous that they now apply

4

in the vast majority of cases sentenced under §2G2.2." *Id.* at 4. Those four enhancements are: 1) use of a computer, §2G2.2(b)(6), which applied over 95% of the time; 2) age of victim, §2G2.2(b)(2), which also applied over 95% of the time; 3) sadistic or masochistic conduct or abuse of an infant or toddler, §2G2.2(b)(4), which applied in 84.0% of cases; and 4) 600 or more images, §2G2.2(b)(7)(D), which applied in 77.2% of cases. *Id.* at 19. The distribution enhancement also applied in 80% of cases charging distribution. *Id.*

As noted by the Commission, "The enhancements are intended to increase the offense level based on the presence of an aggravating factor, but they routinely apply to the typical distribution, receipt, and possession offender, with minimal variation in application rate." *Id.* at 19. For this reason, the Sentencing Commission also noted that Courts have increasingly applied downward variances in response to the high guideline ranges that result from a technical application of §2G2.2. *Id.* at 5 (noting that 59% of non-production child pornography offenders received a variance below the guideline range).

In Mr. Lima's case, when these increasingly meaningless enhancements are put aside, his sentencing guidelines come close to the 63-month sentence recommended by the parties. A sentence of 63-months is the low-end of the guideline range at level 26, 8 levels lower than the guidelines as calculated by probation, and only 4 levels lower than the guidelines as calculated by the parties in the plea agreement. Such a variance is warranted based purely on the flaws inherent in the guidelines in child pornography cases such as this one.

The parties' approach to the guidelines in this case is the same approach an increasing number of Courts have taken in addressing the array of enhancements that apply in almost every case. One judge asserted that the guideline for this offense is "flawed," and "doesn't command the same respect that other aspects of the Guidelines may." *United States v. Hooper*, 12-CR-

10156 (GAO) (Judgment, Dec. 4, 2012); *United States v. Keith*, 11-CR-10294-GAO (ECF No. 106, Transcript of Sentencing, Sept. 29, 2014). In those cases, Judge O'Toole "reconstructed" the guideline "by adjusting for the exclusion of those adjustments" that occur in over 90 percent of cases as set forth in the Sentencing Commission's 2012 report, and "omitted the adjustments" for prepubescent-minor, use of a computer, and number of images, thereby reducing the defendant's offense level by nine. *See Keith*, supra, at pg. 53.[2] Indeed, this Honorable Court has acknowledged the inappropriateness of some of these universally applied enhancements and recognized the widespread criticisms of the child pornography guidelines. *See United States v. O'Hern*, 14-CR-10241-DJC (ECF No. 45-2, Transcript of Sentencing, July 21, 2014, pg. 4) (imposing a 63-month sentence where the guideline range was 151-188 months and the conduct involved distribution and possession of child pornography with a greater number of both images and named victims).

## III.  JUST SENTENCE

Under 18 U.S.C. § 3553(a), the Court should impose a sentence that is "sufficient but not greater than necessary" to achieve the four purposes of sentencing set forth in Section 3553(a)(2).  The sentence must 1) reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; 2) afford adequate deterrence to criminal conduct; 3) protect the public from further crimes of the defendant; and 4) provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in

---

[2] In *United States v. Bhavsar*, Judge Saylor noted "the enhancement for use of a computer is overkill at best in an age in which all photography and all circulation of pornography is done by computer; and likewise, the enhancement for images involving prepubescent minors is duplicative when no other kinds of cases are prosecuted[.]" 10-CR-40018-FDS, ECF No. 56, Excerpt Transcript of Sentencing at 6. *See also United States v. Kearney*, 08-CR-40022-FDS, ECF No. 151, Transcript of Sentencing at 33 (noting that the specific offense characteristics under §2G2.2 are "based on purported individualized factors, but the factors aren't individualized," and that the enhancements for images depicting prepubescent minors, number of images, and use of a computer are" duplicative and unnecessary.").

the most effective manner. 18 U.S.C. §3553(a)(2).  A sentence of 63 months, followed by five years supervised release with strict and specifically tailored conditions of release achieves those goals.

A 63-month prison term is a lengthy sentence that adequately reflects the seriousness of the offense before the Court and provides just punishment. Mr. Lima has no prior criminal history whatsoever and will now be going to federal prison. In addition, after serving his sentence, he will likely be deported back to Brazil, a country he fled due to threats against him and his family. He will be separated from his family and limited in his ability to provide for them, as they struggle to build a life for themselves here in the United States. This is a steep price to pay for the crimes he committed.

Even if he is not deported, Mr. Lima will be on supervised release for at least five years, which, in addition to its purposes of rehabilitation and protection of the public, does constitute additional punishment. He will forever be labeled as a federal felon, and worse yet, as a sex offender. One Court has noted in the past: "The collateral consequences of child pornography convictions are extreme, perhaps more extreme in some ways than any other form of criminal activity… It is a crime of extreme shame and humiliation." *United States v. Bhavsar*, 10-CR-40018-FDS, ECF No. 56, Excerpt Transcript of Sentencing at 8.  If Mr. Lima does remain in the United States, it will be that much harder for him to find a job, to be involved in his children's lives, and to find a place to live. He likely will be subject to harassment, and maybe violence, both in prison and afterwards in the community. He will be shamed for the rest of his life. As several courts have recognized, collateral consequences of conviction, such as registration as a sex offender, are relevant to the "need" for the sentence imposed to reflect just punishment. *See, e.g., United States v. Garate*, 543 F.3d 1026, 1028 (8th Cir. 2008) (overruling prior holding that

it was inappropriate for the district court to consider the lasting effects of being required to register as a sex offender); *United States v. Pauley*, 511 F.3d 468, 474-75 (4th Cir. 2007) (affirming the district court's finding that the defendant "warranted a lower sentence because he lost his teaching certificate and his state pension as a result of his conduct," because "[c]onsideration of these facts is consistent with § 3553(a)'s directive that the sentence reflect the need for just punishment," and "adequate deterrence"); *United States v. Gardellini*, 545 F.3d 1089 (D.C. Cir. 2008) (affirming below-guideline sentence based in part on court's findings that defendant suffered substantial mental and personal stress as a result of his prosecution).

With regard to deterrence, there is nothing to suggest that this federal prosecution and lengthy federal prison sentence will not be sufficient to deter Mr. Lima from reoffending. He has accepted responsibility for his actions, feels deep shame and remorse, and has followed all the rules of the jail in pretrial detention. The agreed-upon sentence sends a strong message to the others in the community that even if you have no record, even if your offense didn't involve any contact with minors, any violence or sexual contact, you will go to federal prison for years.

Lastly, to the extent Mr. Lima needs to be incarcerated to protect the public, he will be for five years. Even when Mr. Lima is released from prison, if he is not deported, he will be subject to the sex offender registry laws, as well as stringent monitoring by probation, all of which will continue to serve to protect the public.

Finally, the proposed sentence will afford effective treatment as required by section 3553(a)(2)(D). Mr. Lima will be able to participate in treatment programs in the Bureau of Prisons. If he is released to serve his term of supervised release, he will be able to continue whatever treatment is deemed necessary in the community, under the continued guidance of probation.

IV. CONDITIONS OF SUPERVISED RELEASE

As noted, if not deported, Mr. Lima will be subject to a minimum of five years' supervised release after his term of imprisonment. He has no prior criminal history whatsoever, and there are no allegations that his offense involved anything other than the use of peer-to-peer file sharing software to download and share child pornography files. He objects to a number of unnecessary and unduly restrictive special conditions of supervised release requested by probation.

Under 18 U.S.C. §3583(d), the court may order special conditions of supervised release, only to the extent that such conditions:

> (1) are reasonably related to (a) the nature and circumstances of the offense and the history and characteristics of the defendant, (b) are designed to afford adequate deterrence to criminal conduct, (c) protect the public from future crimes of the defendant, and (d) provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner;

> (2) involve no greater deprivation of liberty than is reasonably necessary for the purposes of affording adequate deterrence to criminal conduct, protecting the public from further crimes of the defendant, and providing the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; and

> (3) are consistent with any pertinent policy statements issued by the Sentencing Commission pursuant to 28 U.S.C. 994(a). *See also* U.S.S.C. §5D1.3(b).

Courts, including the First Circuit, have criticized District Courts for not being more thoughtful in imposing special conditions of supervised release. For example, in *United States v. Del Valle-Cruz*, the First Circuit vacated conditions of supervised release that prohibited the defendant from having personal contact and residing with minors. 785 F.3d 48 (1st Cir. 2015). The Court held that it was a miscarriage of justice for the Court to impose "onerous conditions without explanation or justification" where those two conditions would interfere with the defendant's

ability to raise his own nine year-old son. *Id.* at 57. The Court found that there was no relationship between the offense and the presence of a child in the home, or that residing with a child would increase the defendant's risk of recidivism. *Id.* at 59. The concurring opinion in that case criticized Courts for imposing "harsh and exacting conditions" while neglecting to provide rationale for their imposition. *Id.* at 65. In another case, the First Circuit vacated certain conditions of supervised release and criticized the sentencing court for taking a "broad-brush, untailored approach to sculpting the conditions of supervised release." *United States v. Hinkel*, 837 F.3d 111, 125 (1st Cir. 2016). In *United States v. Kappes et al.*, the Seventh Circuit said, in remanding a case for resentencing, "perhaps in certain cases, only a small number of well-tailored discretionary conditions may be all that is necessary to accomplish the purposes of supervised release. A comparatively small number of conditions might also make compliance easier on defendants and supervision easier on understaffed probation departments." 782 F.3d 828 (7th Cir. 2015).

Mr. Lima addresses each of the proposed conditions to which he objects in turn:

Proposed Condition 9: Mr. Lima does not object to the installation of monitoring software on any approved internet capable devices. However, he objects to the vague and overly broad prohibition on "any images or content of a sexual or otherwise inappropriate nature." That term is not easily defined and gives Mr. Lima essentially no notice of what he can or cannot view online. What is considered "inappropriate" by one person may not be considered "inappropriate" by another person. Mr. Lima proposes, as an alternative prohibition, a restriction on "sexually explicit materials," as set forth in proposed special condition 11.

Mr. Lima further asks that the relevant part of the condition be worded as follows: "The program(s) used will only be used by probation to identify the viewing, downloading, uploading, transmitting, or otherwise using sexually explicit materials."

Proposed Condition 12: Mr. Lima objects to the portion of this proposed special condition that requires that he disclose usernames and passwords of all accounts relative to internet access, social networking and email to his probation officer. Such a condition is an extreme invasion of privacy not warranted in Mr. Lima's case. Given the amount of private information people have on the computer, this condition basically gives the

probation officer access to every aspect of Mr. Lima's life. Mr. Lima's computer usage
will be policed and monitored enough given the other proposed conditions without giving
probation the ability to read his email and have access to other online accounts.
Furthermore, there is no allegation that he used email, social media, or anything other
than peer-to-peer file sharing software to access child pornography.

Proposed Condition 14: Mr. Lima asks that this condition be modified to allow him to
have contact with his own two children, and that there not be a requirement that he be in
the presence of a responsible adult when he is with his own children.

Imposing all these restrictions on Mr. Lima when he is released from prison, will only further
hinder his reintegration into society, isolate him from his community, and continue to punish him
beyond his term of incarceration by significantly restricting his freedom and allowing him
virtually no privacy. In no other type of offense before this Court would a person with Mr.
Lima's background be subject to such a long list of restrictive and intrusive conditions. These
requests come only in cases involving sex offenses, regardless of whether there is any history of
recidivism and noncompliance or not. When Mr. Lima is released from prison, he will be
monitored by a probation officer and by the local sex offender registry, if not deported. Every
aspect of his private life need not be scrutinized by probation in order to protect the public. The
proposed conditions have little to no therapeutic value. They are, singularly, and even more
impressively as a whole, severe restrictions on Mr. Lima's liberty that bear little relationship to
his history and the offense before the Court.

## **CONCLUSION**

For reasons set forth above, Mr. Lima asks this Court to accept the binding plea
agreement of the parties and impose a sentence of 63 months imprisonment followed by five
years supervised release.

Respectfully submitted,
WALACE LIMA,
By His Attorney,

/s/ Jane F. Peachy
Jane F. Peachy, B.B.O.#661394
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

<u>CERTIFICATE OF SERVICE</u>

I, Jane F. Peachy, hereby certify that this document filed through the ECF system will be sent electronically to the registered participant(s) as identified on the Notice of Electronic Filing (NEF) on October 31, 2022.

/s/ Jane F. Peachy
Jane F. Peachy